UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  **DECISION AND ORDER**
 10-CR-346S

JOHN M. FEGER,

       Defendant.

## I. INTRODUCTION

On February 6, 2012, after a four-day trial, the jury returned a guilty verdict against Defendant John M. Ferger, on a one-count indictment, charging him with violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm and ammunition).

At the conclusion of the Government's case-in-chief, Defendant informed this Court of his intent to renew his motion for a judgment of acquittal. Presently before this Court is Defendant's post-trial motion for a judgment of acquittal, pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, and denial of criminal forfeiture.[1] The Government opposes the motion. For the reasons discussed below, Defendant's motion is denied.

## II. BACKGROUND[2]

The evidence at trial established that Defendant was convicted of a crime punishable by imprisonment for a term exceeding one year prior to June 14, 2010. On that date, at sometime after 8:00 p.m., Parole Officer Michelle Pietroboni accompanied by

---

[1] The submissions relevant to this motion are docket numbers 63, 65, and 66.

[2] As counsel and Defendant did in their motion papers, this Court assumes familiarity with the pretrial proceedings and trial evidence.

1

Parole Officer April Fuller visited Defendant's residence.  Defendant emerged to meet the officers.  When the officers entered, they discovered that Defendant was in the company of a female guest, Laurie Dieter.  Pursuant to his parole conditions, Defendant was not allowed to have guests after 8:00 p.m.  While inside Defendant's residence, Officer Fuller observed a bow and arrow from her position in the kitchen doorway.  Officers handcuffed Defendant, and contacted State police to search for additional weapons.  This search revealed several rounds of ammunition of varying types and calibers, and a Colteer 4-22 .22 caliber rifle.

Defendant was arrested for violating his parole.  The case was then transferred to the United States Attorney's Office for federal prosecution.

### III.  DISCUSSION

**A.     Rule 29**

Rule 29(a) provides, in pertinent part, that upon the defendant's motion, a court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  The focus of a Rule 29 motion therefore falls on the sufficiency of the evidence presented in the government's case-in-chief.  See United States v. Saneaux, No. 03 CR 781, 2005 WL 2875324, at *2 (S.D.N.Y. Nov. 1, 2005).

A defendant challenging the sufficiency of the evidence bears a heavy burden.  See United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000); United States v. Walker, 142 F.3d 103, 112 (2d Cir.1998).  A district court may enter a judgment of acquittal on the grounds of insufficient evidence only if "after viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in the government's favor, it concludes no rational trier of fact could have found the defendant guilty beyond a reasonable doubt."  United States v. Reyes, 302 F.3d 48, 52 (2d Cir. 2002); see also

United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003); United States v. Skinner, No. 03-CR-11, 2005 WL 782811, at *1 (W.D.N.Y. Apr. 6, 2005). Stated another way, "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is non-existent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (citation and quotation omitted).

When considering the trial evidence, "the court must be careful to avoid usurping the role of the jury." See Reyes, 302 F.3d at 52. The court is not permitted to "substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." Guadagna, 183 F.3d at 130 (internal quotations and citations omitted). The court must give "full play" to the jury's credibility determinations, weighing of the evidence, and drawing of justifiable inferences of fact. See United States v. Spadoni, No. 00-CR-217, 2005 WL 2275938, at *3 (D. Conn. Sept. 15, 2005) (citing Guadagna, 183 F.3d at 129).

To sustain its burden at trial on the offense charged, felon in possession of a firearm and ammunition, the Government had to prove beyond a reasonable doubt that Defendant (1) was convicted, in any court, of a crime punishable by imprisonment for a term exceeding one year, as charged, (2) did knowingly possess the firearm or ammunition as charged, and (3) that the possession was in or affecting interstate or foreign commerce.

Defendant does not challenge that the first and third elements were proven at trial. Instead, and as he did at trial, Defendant relies solely on the argument that he did not know the rifle and ammunition were in his home. He argues, generally, that the jury was very conflicted in reaching a verdict, making several requests to have testimony relating to his awareness of the prohibited items read back to them. Jurors also requested clarification

on the definition of "knowledge" and were in disagreement among themselves as to the proper meaning. The jury was also, initially, deadlocked, and had to be encouraged to return to their deliberations and return the following week.

Defendant now asserts that the Government's failure to submit evidence of his actual knowledge of the presence of the rifle and ammunition precludes a rational jury from finding him guilty. In reference to the rifle, Defendant points out that there was no direct testimony that he knew the gun was behind the door. Instead, the only testimony showed that his brother, Roy Feger, placed the firearm there several months earlier. Similarly as to the ammunition, there is no admission by Defendant that he knew it was in his home. Further, the bullets found did not match the caliber of rifle found behind the door.

Finally, Defendant points out various deficiencies in the parole officers investigation. These included not taking photographs of where the ammunition was found and not preparing notes contemporaneously with their search. Defendant also highlights his home's disarray at the time of the search.

This Court finds Defendant's arguments unpersuasive. Though no direct evidence of Defendant's possession was admitted at trial, this is not fatal to the Government's case. See United States v. Glenn, 312 F.3d 58, 64 (2d Cir. 2002) ("[P]rosecution may prove its case entirely by circumstantial evidence so long as guilt is established beyond a reasonable doubt"); United States v. Sureff, 15 F.3d 225, 228 (2d Cir. 1994) (finding that conviction may be based on circumstantial evidence). Moreover, a conviction under § 922(g) may be sustained not only where the Government proves that Defendant physically possessed the firearm or ammunition, but also where he constructive possessed it. See United States v. Payton, 159 F.3d 49, 56 (2d Cir. 1998). In this regard, this Court instructed the jury as follows:

4

> To "possess" means to have something within a person's control. This does not necessarily mean that the defendant must hold it physically, that is, have actual possession of it. Possession includes both actual and constructive possession. A person who is not in actual possession, but who has both the power and the intention to exercise control over something is in constructive possession of it.

See L. Sand, *et al.*, Modern Federal Jury Instructions– Criminal ¶ 35.07 (2011) (model instruction 35-49). To establish constructive possession, the Government must present "sufficient indicia of dominion or control" over the firearm or ammunition. United States v. Rios, 856 F.2d 493, 496 (2d Cir. 1988). Although Defendant's presence alone is not sufficient to establish possession, courts may look to whether a defendant exercised dominion and control "over the premises in which the firearms are located." United States v. Dhinsa, 243 F.3d 635, 676 (2d Cir. 2001) (quoting United States v, Layne, 192 F.3d 556, 571 (6th Cir. 1999), *cert denied*, 529 U.S. 1029, 120 S. Ct. 1443, 146 L. Ed. 2d 330 (2000)); see also United States v. Finley, 245 F.3d 199, 203 (2d Cir. 2001) (quoting United States v. Wilson, 107 F.3d 774, 780 (10th Cir. 1997)) ("Dominion, control, and knowledge may be inferred by a defendant's exclusive possession of the premises."). Further indicia may include keys to an apartment or car, addressed documents including bills or check stubs, eyewitnesses linking a defendant to a residence, and proximity to contraband. United States v. Martinez, 44 F.3d 148, 154 (2d Cir. 1995); Rios, 856 F.2d at 496.

Here, there is no dispute that the rifle and ammunition at issue were found in Plaintiff's exclusive residence. Photographs taken sometime after Defendant's arrest show that the residence was extremely cluttered. Despite the prevailing disorder, the places where the ammunition and rifle were found are sufficient to permit a jury to infer that Defendant exercised the requisite dominion and control of them, and find Defendant guilty

5

of violating §§ 922(g)(1) and 924(a)(2).

The rifle was found behind a door leading into Defendant's basement. Defendant's brother testified to using those stairs after using the rifle to shoot a squirrel. A jury could have found that Defendant would have noticed the rifle while himself using those stairs and accessing the door. A jury could also have come to the conclusion that Defendant retained the rifle for the very purpose of continuing the hobby of which he was an avid fan – hunting. See Finley, 245 F.3d at 203 (jury could find that Defendant kept shotgun for protection in proximity to window from which he sold drugs). The fact that Defendant's brother testified to being a co-owner of the firearm is irrelevant. See Payton, 159 F.3d at 56 ("[G]overnment need not disprove that the weapon was subject to the dominion and control of others.").

Several dozen rounds of ammunition were also discovered in various parts of Defendant's home. Ammunition was discovered in a trunk in the living room that the Defendant and his brother had used to store hunting equipment. Again, a jury could believe that the purpose for which the trunk had been used would mean that Defendant knew it still contained ammunition, especially in light of the evidence showing that dozens of firearms and perhaps thousands of rounds of ammunition had been formerly kept at the residence. Ammunition was also found around a livingroom end table. A jury could have believed that Defendant's everyday usage of that room resulted in him knowing that the ammunition was there.[3]

Particularly damning, from Defendant's perspective, is that some ammunition was recovered from Defendant's bedroom. A shotgun cartridge was recovered from a pair of pants belonging to the Defendant, which were found lying besides his bed. More

---

[3]There is some dispute concerning whether, on the basis of the parole officers' testimony, the ammunition was "in the table" or "on" the table.

ammunition was found elsewhere near his bed, on the floor. A jury could easily have found that Defendant would have become aware of at least the shotgun cartridge in the course of dressing himself. Although Defendant argues that, given the length of the jurors' discussion, the jury could not have reached its guilty verdict because of the ammunition found in the bedroom, as discussed later, this argument is based on pure speculation. In any case, this Court is only tasked with determining whether the evidence was sufficient for the jury to reasonably return a guilty verdict. Here, the presence of the firearm and ammunition in areas not only under the Defendant's direct control, but in intimate nearness to his person behooves a finding consistent with that reached by the jury. See United States v. Sabhnani, 599 F.3d 215, 245 (2d Cir. 2010) (jury could infer knowing possession of immigration documents from fact that Defendant kept own passport in same locked closet, adjacent to master bedroom).

Although neither the ammunition nor rifle was in Defendant's personal possession, a jury could infer that Defendant had handled the ammunition, knew of its existence, and was in constructive possession of it. See United States v. Jones, 531 F.3d 163, 169 (2d Cir. 2008) (jury free to infer that Defendant knowingly and intentionally controlled drugs even where he was arrested in apartment hallway rather than kitchen in which drugs were in plain view). Defendant argues that the bullets discovered did not actually match the caliber of rifle found, but the sheer quantity of varying types of ammunition and the many locations in which it was kept provides additional circumstantial evidence from which a jury could infer that Defendant could not have been unaware of its presence. A jury was free to conclude that Defendant knew about the ammunition, and had simply decided not to go through the trouble of removing every last piece of it from his residence.

Having reviewed the evidence, and considered its totality in the light most favorable

7

to the Government, this Court concludes that it is sufficient for a reasonable jury to have returned a verdict of guilty.

In reaching this conclusion, this Court has also considered Defendant's arguments on the jurors' deliberations. Defendant points out that the jury made several requests to have testimony read back to them, requested clarification as to the definition of "knowledge," and stated that they were deadlocked. Defendant asserts that the jurors' questions and their inability to reach a verdict after several hours of deliberation reflect the fact that their guilty verdict was not rational. Following similar reasoning, Defendant asks this Court to infer that the jury could not have convicted Defendant on the basis of ammunition found on his bedroom floor because then they would have returned a conviction almost immediately. For the same reason, the jury could also not have returned a verdict on the basis of believing the parole officers' testimony that bullets were found on top of the livingroom end table.

Addressing the context of inconsistent jury verdicts, the Second Circuit has recognized "the sanctity of the jury's deliberations and the strong policy against probing into its logic or reasoning" so as not to "open the door to interminable speculation." United States v. Zane, 495 F.2d 683, 690 (2d Cir. 1974). In the same context, in United States v. Gugliaro, the court noted that "it usually cannot be determined with any certainty upon what basis the previous jury reached its general verdict." 501 F.2d 68, 70 (2d Cir. 1974).

Arguments similar to those raised by Defendant have been rejected in the Rule 29 context as being purely speculative. In Minigan v. Donnelly, defendant asserted that the jury's deliberations had been compromised by news of the death of one of the juror's mothers, as evidenced by that juror's in-court demeanor, and the less than half hour it took the jury to reach a verdict following the resumption of deliberations. No. 01-CV-0026A,

2007 WL 542137, at *21 (W.D.N.Y. Feb. 16, 2007). That argument was rejected as "pure speculation." Id.; see also United States v. Williams, 283 F. Supp. 2d 850, 857 (E.D.N.Y. 2003) (rejecting as mere speculation defendant's argument that brief deliberation period after substitution of alternates indicated that jurors failed to follow Court's instructions); United States v. Barroso, 108 F. Supp. 2d 338, 348 (S.D.N.Y. 2000) (finding it "sheer speculation" that defendant's plea allocution played disproportionate part in jurors' deliberations despite jury convicting defendant five minutes after hearing read-back). As in that case, Defendant's suggestions here, regarding what the jurors ultimately based their verdict on, are speculative. Myriad reasons are possible: It may be that some jurors were initially confused, but upon re-reading this Court's instructions came to an understanding of the law. It may also be that jurors differed over their recollection of the trial testimony, and had to engage in extensive discussions to arrive at a mutual understanding of the facts. Whatever the ultimate truth, this Court is not prepared to forge into juror's minds and seek out a result favorable to Defendant, especially when on a motion such as this, it must draw all reasonable inferences in favor of the Government.

Defendant's argument concerning whether jurors found the parole officers' testimony credible is similarly unavailing. Defendant's memorandum alleges various inconsistencies in the Government witnesses' testimonies. The officers' testimony was that Defendant acted dismissively while denying knowledge of the rifle and ammunition, but failed to include that observation in their notes of that night. At a parole hearing, one of the officers testified that she found bullets "in the table," whereas at trial she testified that they were "on" the end table. The officers also gave inconsistent testimony about which officer called for backup. Even so, "[i]t is not for the court on a Rule 29 motion to make credibility determinations." Autuori, 212 F.3d at 118. Instead, this Court must "assume that the jury

9

'resolve[d] all issues of credibility in favor of the prosecution.'" United States v. Florez, 447 F.3d 145, 156 (2d Cir. 2006) (quoting United States v. Khan, 787 F.2d 28, 34 (2d Cir. 1986)) (alterations in original).  Defendant's argument that the jury could not have believed the parole officers' testimony concerning the location of the bullets in the livingroom and Defendant's demeanor are thus rejected.

Having considered Defendant's arguments and the evidence in the light most favorable to the prosecution, this Court will deny Defendant's request for a judgment of acquittal.

**B.    Forfeiture Allegation**

Defendant does not challenge forfeiture of the ammunition, but does ask that the rifle seized in this case be returned to his brother.  Defendant points out his brother's trial testimony, which supports a finding that the rifle is a "special gun" of the family, passed down to Defendant and his brother.  The Government responds that forfeiture of the firearm is a mandatory part of Defendant's sentence, and that this Court does not have discretion to grant Defendant's request.  In his reply, Defendant does not respond to the Government's forfeiture argument.

"As soon as practical after a verdict or finding of guilty . . . on any count in an indictment . . . regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute."  Fed. R. Crim. P. 32.2(b)(1)(A).  If the Government seeks forfeiture, then this Court must make a determination as to whether it "has established the requisite nexus between the property and the offense."  Id.  Here, this Court concludes that the requisite nexus has easily been shown, the contraband forming the basis of Defendant's offense conduct.  Further, upon

finding that property is subject to forfeiture, this Court "must enter the order without regard to any third party's interest in the property." Fed. Cr. Crim. P. 32.2(b)(2)(A).

In light of the clear mandate of Rule 32.2, and Defendant's failure to respond to the Government's argument, this Court will enter a preliminary order of forfeiture. Defendant's brother may file a timely petition pursuant to Federal Rule of Criminal Procedure 32.2(c) if he wishes to challenge the Government's retention of the firearm or ammunition.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion seeking a judgment of acquittal is denied.

## V.  ORDER

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment of Acquittal (Docket No. 63) is DENIED.

SO ORDERED.

Dated:  March 27, 2012
        Buffalo, New York

                                        /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                            Chief Judge
                                        United States District Court